UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 9077

------------------------------------------------------------------- x

COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION

                             Plaintiff,

                      - against –

IQOR, INC. (f/k/a INTELLIRISK MANAGEMENT CORPORATION,

                             Defendant.

------------------------------------------------------------------- x

Civil Action No. _____

**VERIFIED COMPLAINT**

## VERIFIED COMPLAINT

Plaintiff COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION ("Cognizant"), by and through its attorneys, DLA Piper LLP (US), and against Defendants, IQOR, INC. (f/k/a INTELLIRISK MANAGEMENT CORPORATION) ("iQor"), alleges as follows:

### Introduction

1. Cognizant seeks a temporary restraining order and a preliminary injunction in connection with iQor's wrongful conduct against it in breach of iQor's contractual non-solicitation obligations.

2. iQor violated and is continuing to violate the limited and reasonable terms of the non-solicitation agreement it entered into with Cognizant by soliciting and offering employment to Cognizant's current and former employees and independent contractors. Through its solicitation and hiring of these current and former Cognizant employees and independent contractors, iQor inevitably will misappropriate and misuse confidential corporate and proprietary information, and other business information learned by the current and former

Cognizant employees and independent contractors while employed at Cognizant, for the benefit of their new prospective employer, iQor.

3. By this action, Cognizant seeks preliminary injunctive relief enjoining iQor from continuing to violate the express terms of the non-solicitation agreement and maintaining the status quo pending the outcome of arbitration between the parties.

## Parties

4. Plaintiff Cognizant is a corporation with its principal place of business located in Teaneck, New Jersey.

5. Defendant iQor is a corporation with its principal place of business located in New York, New York.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) based on Cognizant's citizenship in the State of New Jersey and iQor's citizenship in the State of New York, and the matter in controversy is in excess of $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## Cognizant's Business

8. Cognizant is a leading provider of custom Information Technology (IT) consulting and technology services and outsourcing services. Its customers are primarily Global 2000 companies located in North America, Europe and Asia. Its core competencies include Technology Consulting, Complex Systems Development and Integration, Enterprise Software Package Implementation and Maintenance, Data Warehousing, Business Intelligence and Analytics, Application Testing, Application Maintenance, Infrastructure Management, and

Business and Knowledge Process Outsourcing (BPO and KPO). Cognizant tailors its services to specific industries, and utilizes an integrated global sourcing model. This seamless global sourcing model combines technical and account management teams located on-site at the customer location and at dedicated near-shore and offshore development and delivery centers located primarily in India, China, the United States, Argentina, Hungary and the Philippines.

9. Cognizant's business is organized and managed primarily around four vertically-oriented business segments: Financial Services; Healthcare; Manufacturing, Retail and Logistics; and Other, which includes Communications, Information, Media and Entertainment and High Technology. This vertical focus has been central to Cognizant's revenue growth and high customer satisfaction. As the IT services industry continues to mature, clients are looking for service providers who understand their businesses, industry initiatives, culture and have solutions tailored to meet their individual business needs.

10. Cognizant has continued to hire experts out of industry, establish a broad base of business analysts and consultants, invest in industry training for its staff, and build out industry-specific services and solutions. This approach is central to Cognizant's high-levels of on-time delivery and customer satisfaction.

11. Using a globally distributed workforce to provide value-added services presents a number of challenges to IT services and BPO/KPO providers, like Cognizant. The offshore implementation of value-added IT services requires that Cognizant continually and effectively attract, train and retain highly skilled software development professionals with advanced technical and industry skills necessary to keep pace with continuing changes in information technology, evolving industry standards and changing customer preferences. These skills are

necessary to design, develop and deploy high-quality technology solutions in a cost-effective and timely manner.

12. Competition in the IT industry in general is fierce and highly dependent on the development of proprietary information and Cognizant invests considerable time and resources into developing its own technology. Moreover, competition in the IT industry for talented employees and Cognizant invests considerable time and resources into recruiting and retaining its employees.

13. Moreover, Cognizant closely guards its proprietary information because this information is what enables Cognizant to serve its clients' needs efficiently and effectively. If this information were generally available to Cognizant's customers and competitors, Cognizant would lose its competitive edge and would eventually be out of business. Thus, it is crucial to the success of Cognizant's business to protect against the misappropriation of its confidential proprietary information.

14. For this reason, Cognizant ensures that all information related to its employees/independent contractors are protected from disclosure by virtue of Non-Disclosure Agreements that each employee/independent contract is required to sign as a condition of employment.

### Employee Non-Disclosure Agreements

15. Cognizant requires all of its employees and independent contractors to execute a Non-Disclosure Agreement that contains provisions for the protection of its confidential information. True and correct copies of the Non-Disclosure Agreements are attached as Exhibits A, B, and C.

16. Section 1 of each of the Non-Disclosure Agreements states:

> The employee acknowledges that all Proprietary Information, as defined below, is the exclusive property of the Company or the party that disclosed or delivered same of the Company. Specifically, Employee agrees that all Proprietary Information developed as a direct or indirect result of the Employee's efforts during any period of employment with the Company shall be and shall remain the exclusive property of the Company, and the Employee shall have no ownership interest therein. To the extent Employee may have any interest in such developed Proprietary Information, Employee assigns such interest to the Company. While employed by the Company for a period of three (3) years thereafter, Employee shall not use or disclose any Proprietary Information, directly or indirectly, except as authorized by the Company in connection with Employee's assigned duties. The foregoing notwithstanding Employee shall not in any time use or disclose, directly or indirectly, any of the Proprietary Information constituting Trade Secrets of the Company, as defined below, except as authorized by the Company in connection with Employee's assigned duties.

See Exs. A, B, and C at 1.

17. In the Non-Disclosure Agreements, Proprietary Information is defined to include the following:

> (i) Application, operating system, communication and other computer software, including without limitation all source and object code, flow charts, algorithms, coding sheets, routines, sub-routines, compilers, assemblers, design concepts and related documentation and manuals;
>
> (ii) Production processes, marketing techniques, purchasing information, fee lists, licensing policies, quoting procedures, financial information, employee names and job descriptions, customer and prospective customer names and requirements, data and other information or material relating to the manner in which any customer, prospective customer of the Company do business;
>
> (iii) Discoveries, concepts and ideas (including but on limited to the nature and results of research and development activities), processes, formulae, techniques, "know-how", designs, drawings and specifications;
>
> (iv) Any other information or material relating to business or activities of the Company which is not generally known to others engaged in similar business or activities;

(v) All inventions and ideas which are derived from or relate to Employee's access to or knowledge of any of the information or material described herein; and

(vi) Any information of raw materials described herein which is the property of any other person or firm which has revealed or delivered such information or material to the Company pursuant to a contractual relationship with the Company or otherwise the sources of the Company's business. "Proprietary Information" shall not include any information or material of the type described herein to the extent that such information or material is or becomes publicly known through no act on Employee's part. "Trade Secrets", as preferred [sic] herein, include all of the information and materials described in paragraphs (i), (ii), (iii), (iv), (v), and (vi). The failure to mark any of the Proprietary Information as confidential shall not affect its status as Proprietary Information or Trade Secrets.

See Exs. A, B, and C at 1-2.

18. Each of the Non-Disclosure Agreements provides:

**4. INJUNCTIVE RELIEF**
Because of the valuable and unique nature of Proprietary Information, Employee understands and agrees that the Company shall suffer irreparable harm if the Employee breaches any of the Employee's obligations under this Agreement and that monetary damages shall be inadequate to compensate the Company for any breach thereof. Accordingly, Employee agrees that, in addition to any other remedies or rights, the Company shall have the rights to obtain an injunction to force the terms of this agreement.

See Exs. A, B, and C at 2.

**Master Services Agreement Between Cognizant and iQor**

19. On or about June 29, 2006, Cognizant and iQor's predecessor, IntelliRisk Management Corporation, entered into a Master Services Agreement (the "MSA"). A true and correct copy of the Master Services Agreement is hereby attached as Exhibit D.

20. The MSA described the types of services to be provided by Cognizant and expressly stated and defined the nature of the relationship between Cognizant and iQor.

21. Section 10.2 (Non-Solicitation Obligations) of the MSA provides:

> During the term hereof and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit for employment or employ, or accept services provided by, (i) any employee, officer or independent contractor of the other party; or (ii) any former employee, officer or independent contractor of the other party who performed any work in connection with or related to the Services. Nothing will prevent either party (acting in good faith) from undertaking general recruitment advertising in the press and offering employment to any such person who responds to such advertising without inducement by the hiring party.

Ex. D, at 11.

22. Section 12.5.1 provides that the parties "will negotiate in good faith to resolve any dispute, claim, controversy or disagreement that may arise between the parties. If the parties are unable to resolve any dispute through their Relationship Managers, then the dispute, claim, controversy or disagreement shall be submitted to arbitration as provided below." Ex. D, at 13.

23. The following section, Section 12.5.2 (Binding Arbitration), provides that if "the mediation in Section 12.5.1 proves unsuccessful," the parties will submit to arbitration, "pursuant to the commercial arbitration rules of the American Arbitration Association ("AAA")" to take place in New York, New York. It additionally provides that "[e]ither party may seek any interim or preliminary relief from any state or federal court in the United States with jurisdiction over the subject matter and parties as is necessary to protect the rights or property of either party pending the completion of arbitration." See Ex. D, at 13.

24. Section 12.1 of the MSA provides that it will be governed by the laws of the State of New York. See Ex. D, at 12.

### iQor's Wrongful Conduct

25. Beginning in late 2009, it came to Cognizant's attention that, in direct violation of the Non-Solicitation Provision contained in Section 10.2 of the MSA, current Cognizant

employees/independent contractors who were providing services to iQor were being actively solicited for employment by iQor.

26. On November 10, 2009, Cognizant sent an email to iQor stating that a Cognizant employee had "been offered a job at iQor" and making it clear that "this goes against the word and spirit of section 10.2 of the MSA." A true and correct copy of the November 10, 2009 email is hereby attached as Exhibit E.

27. In response, on November 11, 2009, iQor responded that the employee "quit and had taken another job. According to Vijay, you had determined to let him go. Losing him would be problematic from our perspective so we made him an offer. Please do not preach to me about the spirit or letter of the contract. You guys should be thankful he is still part of the equation as he will help you deliver the product." See id.

28. The solicitation of Cognizant employees/independent contractors by iQor did not stop there. On August 11, 2010, Cognizant again was forced to send an email to iQor requesting that "[i]n the true spirit and written word of this relationship we urge you and all at iQor or its affiliates to henceforth desist from soliciting Cognizant employees." A true and correct copy of the August 11, 2010 email is hereby attached as Exhibit F.

29. On August 24, 2010, Cognizant formally wrote to iQor to request that iQor cease and desist from such actions immediately. A true and correct copy of the August 24, 2010 Letter is hereby attached as Exhibit G.

30. In spite of these repeated requests, iQor continued soliciting and making offers of employment to Cognizant employees/independent contractors.

31. In November 2010, iQor's wrongful actions continued. iQor continued to solicit Cognizant employees/independent contractors with offers of increased salaries and other accommodations.

32. On November 28, 2010, Cognizant received resignation notices from two of its current employees that had worked with iQor in connection with the MSA. True and correct copies of the resignation notices are hereby attached as Exhibits H and I. Both of the resigning employees confirmed that they were resigning because they had accepted positions with iQor.

33. On November 30, 2010, Cognizant's counsel wrote to iQor to schedule a good faith attempt to negotiate an amicable resolution to this matter pursuant to Section 12.5.1 of the MSA. A true and correct copy of the November 30, 2010 Letter is hereby attached as Exhibit J.

34. On December 2, 2010, counsel for iQor responded and proposed that the Relationship Managers for each party meet at 10:00 a.m. on December 3, 2010, to discuss and attempt to resolve the dispute. A true and correct copy of the December 2, 2010 Letter is hereby attached as Exhibit K.

35. At the December 3, 2010 meeting, the parties were not able to successfully resolve their dispute.

36. The employees that have resigned from Cognizant to accept positions with iQor have agreed to remain at Cognizant until December 31, 2010.

37. Additionally, the agreement between Cognizant and iQor was that Cognizant would provide iQor with the services of its employees/independent contractors in exchange for iQor's timely payments to Cognizant. However, rather than timely pay Cognizant the amounts owed, iQor began to devote its energies to recruiting and soliciting Cognizant employees/independent contractors with the result that iQor would directly receive the benefit of

the talent cultivated by Cognizant and Cognizant would be deprived of the benefit of its bargain with iQor under the MSA.

38. The latest hiring campaign appears to be triggered by Cognizant notifying iQor on November 9, 2010, that Cognizant did not wish to take new work from it after Cognizant completes its obligation to provide services to iQor through December 31, 2010.

## COUNT I
### (Breach of Contract)

39. Cognizant realleges and incorporates paragraphs 1 through 38, as though fully set forth herein.

40. iQor had knowledge of the express terms of the MSA that prohibited iQor from directly or indirectly soliciting any current Cognizant employees/independent contractors or former Cognizant employees/independent contractors who performed services in connection with the MSA during the term of the MSA and for a period of twelve months afterward.

41. iQor breached the MSA and continues to breach the MSA by soliciting Cognizant's current and former employees/independent contractors, offering them jobs at iQor and encouraging them to resign from their employment at Cognizant to accept a position at iQor.

42. The solicitation of these employees by iQor causes Cognizant to lose resources it has devoted substantial time and money in training, which hurts the business, and causes Cognizant morale issues with the remaining employees who have to work along side their former co-workers who are now employed by the client at higher compensation and benefit levels. The employment of former Cognizant employees/independent contractors by iQor would necessarily require these employees/independent contractors to disclose their knowledge of Cognizant's confidential proprietary information to iQor.

43. iQor's solicitation of Cognizant's current and former employees/independent contractors has caused Cognizant immediate and irreparable harm that cannot be repaired by money damages alone. Unless enjoined, iQor will continue to cause Cognizant immediate and irreparable harm.

44. The solicited employees/independent contractors acknowledged in their Non-Disclosure Agreements that disclosure of Cognizant's confidential proprietary information would cause Cognizant irreparable damage and agreed that Cognizant would be entitled to an injunction to restrain them from such breaches.

45. Cognizant performed fully its obligations under the MSA.

46. The MSA expressly provides that either party may seek preliminary relief from any court "as is necessary to protect the rights or property of either party pending the completion of arbitration." See Ex. D, at 13.

47. iQor's intentional breaches of the MSA injured Cognizant's business, thereby causing Cognizant to suffer irreparable harm.

48. Cognizant is entitled to injunctive relief.

**WHEREFORE**, Cognizant respectfully requests that:

(1) without geographic limitation, iQor be preliminarily enjoined from soliciting, employing, hiring, offering employment to, or encouraging the resignation of any current employee/independent contractor of Cognizant or any former employee or independent contractor of Cognizant who performed services in connection with the MSA, and who has not already commenced actual employment at iQor before the date of the injunction, so that the status quo is maintained pending the outcome of arbitration;

(2) Cognizant be reimbursed by iQor for any and all attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3) This Court grant such other and further relief as it may deem just and equitable.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

49.  Cognizant realleges and incorporates paragraphs 1 through 48, as though fully set forth herein.

50.  Pursuant to the MSA, iQor is prohibited from soliciting current and certain former Cognizant employees and independent contractors.

51.  When Cognizant became aware that iQor was repeatedly and systematically attempting to solicit and recruit current and certain former Cognizant employees and independent contractors, Cognizant repeatedly notified iQor that this behavior was in direct breach of the MSA and requested that iQor cease such actions immediately.

52.  iQor largely ignored Cognizant's requests to cease its solicitation and recruitment of current and certain former Cognizant employees and independent contractors and continued to engage in such conduct in bad faith.

53.  Additionally, rather than timely pay Cognizant the amounts owed under the MSA, iQor began to devote its energies to recruiting and soliciting Cognizant employees/independent contractors with the intent that iQor would directly receive the benefit of the talent cultivated by Cognizant and that Cognizant would be deprived of the benefit of its bargain with iQor under the MSA.

54.  These actions were taken with malice, bad faith and/or reckless indifference to Cognizant's rights under the MSA.

55.  By its actions, iQor intended to deprive Cognizant of its rights under the MSA.

56.  iQor breached the implied covenant of good faith and fair dealing by engaging in this improper conduct, breaching the Non-Solicitation provision that was designed to protect

Cognizant's interests, and ignoring and resisting Cognizant's repeated good faith attempts to resolve the dispute.

57. As a result of these actions, Cognizant has suffered damages. iQor has benefited financially as a result of its improper actions.

**WHEREFORE**, Cognizant respectfully requests that:

(1) without geographic limitation, iQor be preliminarily enjoined from soliciting, employing, hiring, offering employment to, or encouraging the resignation of any current employee/independent contractor of Cognizant or any former employee or independent contractor of Cognizant who performed services in connection with the MSA, and who has not already commenced actual employment at iQor before the date of the injunction, so that the status quo is maintained pending the outcome of arbitration;

(2) Cognizant be reimbursed by iQor for any and all attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3) This Court grant such other and further relief as it may deem just and equitable.

## COUNT III
### (Tortious Interference with Non-Disclosure Agreements)

58. Cognizant realleges and incorporates paragraphs 1 through 57, as though fully set forth herein.

59. iQor wrongfully solicited Cognizant's individual current and former employees/independent contractors to join iQor and bring with them the proprietary information they had learned and developed while employed by Cognizant.

60. The nondisclosure of Cognizant's confidential proprietary information is a condition of the employees'/independent contractors' employment with Cognizant and the employees/independent contractors are contractually obligated not to disclose any such confidential proprietary information for a period of three years after their employment with Cognizant terminates.

61.     By virtue of its utilization of Cognizant's services pursuant to the MSA and its interactions with Cognizant's employees/independent contractors, iQor knew or should have known of the contractual relationships between Cognizant and its employees/independent contractors and that Cognizant's employees/independent contractors have knowledge of Cognizant's confidential proprietary information that they are contractually prohibited from disclosing to third parties.

62.     iQor purposefully interfered with the Non-Disclosure Agreements between Cognizant and its employees/independent contractors by soliciting those employees for employment with iQor, encouraging these employees to leave their positions at Cognizant, and take positions offered by iQor.

63.     Employment by iQor of Cognizant's former employees/independent contractors would necessarily require these employees/independent contractors to disclose their knowledge of Cognizant's confidential proprietary information to iQor.

64.     iQor's tortious interference with the Non-Disclosure Agreements between Cognizant and its employees/independent contractors caused and will continue to cause Cognizant irreparable harm, including the loss of revenue, good will and the competitive edge it maintains by preventing the disclosure of its confidential proprietary information.

**WHEREFORE,** Cognizant respectfully requests that:

(1)     without geographic limitation, iQor be preliminarily enjoined from soliciting, employing, hiring, offering employment to, or encouraging the resignation of any current employee/independent contractor of Cognizant or any former employee or independent contractor of Cognizant who performed services in connection with the MSA, and who has not already commenced actual employment at iQor before the date of the injunction, so that the status quo is maintained pending the outcome of arbitration;

(2)   Cognizant be reimbursed by iQor for any and all attorneys' fees, costs, and expenses incurred as a result of the wrongful conduct described herein, including such costs and fees incurred in this litigation; and

(3)   This Court grant such other and further relief as it may deem just and equitable.

Dated: Florham Park, New Jersey
December 3, 2010

**DLA PIPER LLP (US)**

By:  *(signature)*
Andrew O. Bunn

Attorneys for Plaintiff
300 Campus Drive, Suite 100
Florham Park, New Jersey  07932
(973) 520-2562

## VERIFICATION

I, Avinash Wadhwani, declare:

I am employed by Cognizant Technology Solutions ("Cognizant"), and I am duly authorized to sign this Verification on behalf of Cognizant.

I have read Cognizant's Complaint. I have knowledge of the facts set forth in the Complaint and believe them to be true to the best of my knowledge as of the date of the Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Verification on December 3, 2010, at New York, New York.

_____
AVINASH WADHWANI